Filed 2/5/24  P. v. Valentine CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FIFTH APPELLATE DISTRICT

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>CARSON ANDREW VALENTINE,<br><br>    Defendant and Appellant. | F086375<br><br>(Fresno Super. Ct. No. F21907499)<br><br><br>**OPINION** |

-ooOoo-

## THE COURT[*]

APPEAL from a judgment of the Superior Court of Fresno County.  Gabriel L. Brickey, Judge.

Dan Moseley for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Darren K. Indermill, and Jeffrey D. Firestone, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*] Before Poochigian, Acting P. J., Meehan, J. and De Santos, J.

Defendant and appellant Carson Andrew Valentine contends the court erred in having him serve one year in jail rather than probation, and erroneously denied his motion for release pending appeal. We reject the first contention and conclude the second is therefore moot. We affirm the judgment.

**BACKGROUND**

In a felony complaint filed September 24, 2021, defendant was charged with carrying a loaded firearm in public (count 1; Pen. Code, § 25850, subd. (a))[1] of which he was not the registered owner (*id*., subd. (c)(6)), concealing a firearm in a vehicle (count 2; § 25400, subd. (a)(1)) of which he was not the registered owner (*id*., subd. (c)(6)), possessing fentanyl, a controlled substance, for sale (count 3; Health & Saf. Code, § 11351), possessing oxycodone, a controlled substance, for sale (count 4; *ibid*.), possessing Xanax, a designated controlled substance, for sale (count 5; Health & Saf. Code, § 11375, subd. (b)(1).)

On April 19, 2023, defendant pled no contest to counts 1 and 4, and the nonregistered-owner allegation. In exchange, the prosecution agreed to a two-year lid on defendant's sentence and to dismiss the remaining charges. The prosecution moved to dismiss the remaining counts while "reserving [the] right to comment" on them in the future. Defendant was continued on pretrial supervised release.

The probation officer found no circumstances in mitigation or aggravation relating to the crime. As for factors relating to the defendant, the probation officer cited in aggravation the numerous and/or increasingly serious criminal history. In mitigation, the probation officer concluded defendant had an insignificant record of criminal conduct, considering the recency and frequency of prior crimes; he was young; and voluntarily acknowledged wrongdoing. The probation officer recommended that defendant be granted probation.

---

[1] All further undesignated statutory references are to the Penal Code unless otherwise stated.

On June 1, 2023, the court conducted the sentencing hearing. The court stated it strongly considered probation but ultimately concluded probation would not be in the interests of justice. The court stated it was "particularly troubled by the amount of controlled substances the defendant was in possession of, including the large amount of fentanyl, as mentioned by the People."

The court sentenced defendant to one year in county jail, followed by one year of mandatory supervision. The minute order reflects this sentence was for count 4. The minute order further states the court sentenced defendant to a concurrent term of two years on count 1.

After pronouncing sentence, the court noted defendant's attendance at meetings and counseling, but reiterated that "peddling in [f]entanyl cannot be accepted."

On June 12, 2023, defendant filed a motion for release pending appeal. (See §§ 1272, 1318.) On June 28, 2023, the court denied the motion.

Defendant filed two notices of appeal in this case. The first, filed June 2, 2023, challenged the judgment entered June 1, 2023. The second, filed July 3, 2023, challenged the court's June 28, 2023, order denying his motion for release pending appeal.

On October 27, 2023, defendant filed a petition for writ of habeas corpus on the same grounds as his appeal, out of a concern that he would serve his one-year in custody before his appeal was decided.

## FACTS

The probation report summarized information from a police report as follows. On September 22, 2021, at around 7:30 a.m., detectives served a search warrant on a residence pursuant to a fentanyl overdose investigation. Defendant was present. Law enforcement suspected defendant was involved in distributing M30 pills.

Inside the residence, detectives located 58 blue M30 pills and 220 Xanax bars. The M30 pills were tested and revealed to contain fentanyl, methamphetamine, and

3.

acetaminophen. The Xanax bars were tested and determined to contain both oxycodone and fentanyl.

Defendant initially denied selling narcotics but later admitted driving to Carson City to purchase the narcotics in order to sell them. Defendant said he and one Anthony Perez would purchase thousands of Xanax bars at a time and sell about 1,000 per month. Defendant said he previously had an "opiate problem" and admitted to taking unprescribed Xanax daily.

Defendant also admitted to possessing a firearm in the trunk of his vehicle. Detectives located the firearm, which was a loaded .22-caliber handgun with no serial number. Four additional handgun magazines with 59 live .22-caliber rounds were also found. He said he had the firearm for protection because he and Perez had been robbed by Bulldog gang members for their Xanax bars.

Defendant said he first used alcohol at age 13 and marijuana at age 14.

## DISCUSSION

### I. Defendant's Contention Concerning Release on Appeal is Mooted by our Affirmance of the Judgment

Defendant contends the court erred in denying his motion for release on appeal.

Granting a motion for release on bail after conviction is "a matter of discretion." (§ 1272, subd. (c).) The moving defendant must prove all of the following: (1) that he or she is not likely to flee, by clear and convincing evidence; (2) that he or she does not pose a danger to the safety of any other person or to the community, by clear and convincing evidence; and (3) that the appeal is not for the purpose of delay and raises a substantial legal question which, if decided in favor of the defendant, is likely to result in reversal. (§ 1272.1, subds. (a), (b), and (c).)

Even if a defendant is admitted to bail after conviction upon appeal, he must "surrender himself in execution of the judgment, upon its being affirmed …." (§ 1273.)

4.

In other words, even if the motion is granted, the defendant would need to serve his sentence once the judgment was affirmed on appeal.

### *This Claim is Mooted by our Resolution of Defendant's Substantive Claims on Appeal*

Because we affirm the judgment for the reasons explained in section II of the Discussion, *post*, this issue is moot. Even if we had agreed with defendant that the motion should have been granted, our ultimate disposition of affirmance would still result in defendant being incarcerated after "surrender[ing] himself in execution of the judgment." (§ 1273.)

## II. The Court Did Not Err in Denying Probation

Defendant contends the court erred in denying probation.

" ' " '[P]robation' means the suspension of the imposition or execution of a sentence and the order of conditional and revocable release in the community under the supervision of a probation officer." (§ 1203, subd. (a).) All defendants are eligible for probation, in the discretion of the sentencing court [citation], unless a statute provides otherwise.' " (*People v. Centeno* (2019) 38 Cal.App.5th 572, 579–580.)

California Rules of Court, rule 4.414 sets forth several criteria affecting the probation determination. This list of considerations is mandatory, but not exclusive. (Cal. Rules of Court, rules 4.408–4.409.)

We review the denial of probation for abuse of discretion. (*People v. Shenouda* (2015) 240 Cal.App.4th 358, 368.) Under that standard, we presume the trial court's decision was designed to achieve legitimate sentencing aims. We will only reverse if there is a clear showing the court's ruling was "arbitrary or irrational." We will not reverse the court's determination merely because reasonable people might have reached a different decision. (*Id.* at p. 369.)

### Court's Decision

In discussing the possibility of probation, the court observed that defendant "is not without criminal history" though they were juvenile adjudications. The court stated it was, "particularly troubled by the amount of controlled substances the defendant was in possession of, including the large amount of [f]entanyl, as mentioned by the People."

The court said it strongly considered probation, but ultimately concluded probation would not be in the interest of justice. Instead, the court ordered that defendant serve one year of his sentence in county jail, followed by one year of mandatory supervision.

After pronouncing sentence, the court addressed the defendant, reiterating that the court "strongly considered probation, and was moved by the letters sent on your behalf, noting your attendance at meetings and counseling." The court continued, "[H]owever, peddling in [f]entanyl cannot be accepted. It cannot be accepted."

### Analysis

Defendant observes that his case involved 58 M30 pills containing methamphetamine, fentanyl and acetaminophen, and 220 bars with oxycodone and fentanyl. He notes that M30 pills typically weigh 30 milligrams, according to the Drug Enforcement Administration. He then asks rhetorically if that is "truly an amount about which courts should be 'particularly troubled'?"

We agree with respondent that the answer to this question is "yes." We see no abuse of discretion in the court's emphasis on the amount of drugs in defendant's possession. Together, defendant had 278 pills/bars with fentanyl – a powerful and dangerous drug. Of course, some other cases involve even more drugs, but that does not render the court's concern in this case an abuse of discretion.

Defendant observes that the concentration of methamphetamine, oxycodone, and fentanyl in the pills/bars is not specified in the record. We do not see how that is fatal to

6.

the court's decision. Possessing hundreds of pills/bars with even small amounts of those illegal drugs is a serious offense that a court is entitled to be concerned about.

Defendant also points to *People v. Harvey* (1979) 25 Cal.3d 754, which noted that it would be improper for the sentencing court to consider the facts underlying the dismissed count for purposes of aggravating the defendant's sentence. He then observes that count 3, possession of fentanyl for sale, was dismissed as part of the plea bargain. However, the prosecutor's motion to dismiss the remaining counts – including count 3 – expressly reserved the right to comment on the dismissed counts. Defendant did not object or oppose the motion, and the court granted it. If the prosecutor's motion had been contrary to the plea bargain, it was incumbent on defendant to oppose the motion. He cannot be heard to complain now.

Defendant next contends that the court's concern that he was "peddling [f]entanyl" is not "based upon an individualized consideration of the offense [and] the offender." However, the "individualized consideration" requirement does not mean the court can only consider factors that are absolutely unique to defendant's commission of the crime. Rather, the court is entitled to compare the nature, seriousness, and circumstances of defendant's crime to "other instances of the same crime." (Cal Rules of Court, rule 4.414(a)(1).) Thus, it is appropriate for a court to rely on the relative seriousness of defendant's crime to other instances of the same crime, even if the way in which defendant's crime was more serious is not absolutely unique. Here, defendant was being sentenced on carrying a loaded firearm in public and possessing oxycodone for sale. One way in which defendant's possession of oxycodone for sale was more serious than "other instances" of that crime is that the oxycodone he possessed was in bars that *also* had fentanyl in them. The fact that defendant is not the first person to ever possess fentanyl is irrelevant. What is relevant is that defendant's commission of his crime was more serious than "other instances of the same crime." (*Ibid*.)

Defendant's next contention is that there is no independent evidence in the record defendant actually sold fentanyl. This is important, according to defendant, because intent to sell is "far less serious" than actual sales. Defendant overstates his case. If a person possesses Fentanyl and intends to sell it, the mere fortuity that he has been caught before being able to effect a sale should only have a modest effect on his culpability. More fundamentally, there is evidence from which the court could reasonably infer defendant actually sold fentanyl. Defendant admitted to purchasing thousands of Xanax bars at a time and selling approximately 1,000 bars per month. The Xanax bars recovered in defendant's residence contained fentanyl. This evidence supports the sentencing court's inference that defendant actually sold fentanyl.

### Criminal History

Defendant also argues that his juvenile adjudications involved three "relatively minor and limited incidents" that occurred seven years prior when defendant was 14 years old. He says they were unrelated to the present offenses and "have little bearing on his character today."

These contentions do not establish an abuse of discretion. Defendant does not seem to dispute that the court could consider his criminal history to some extent, but instead emphasizes its limited persuasive value. However, it appears the criminal history did in fact play a limited role in the court's determination. The court mentioned defendant's criminal history very briefly and expressly acknowledged the history was limited to juvenile adjudications. The court's further statements at sentencing indicate it was far more concerned with defendant's present offenses than his history of juvenile adjudications. Because the circumstances of the present offense were sufficient to support a denial of probation, the fact that his criminal history had only a limited incremental impact on the decision is immaterial.

## DISPOSITION

The judgment is affirmed.

8.