Filed 12/29/20  P. v. Molina CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Butte)

----

| | |
|---|---|
| THE PEOPLE, | C092032 |
| Plaintiff and Respondent, | (Super. Ct. No. 19CF01695) |
| v. | |
| ERIK MOLINA, | |
| Defendant and Appellant. | |

In an open plea, defendant Erik Molina pleaded no contest to battery resulting in serious injury after he brutally punched and kicked a man outside a fast food restaurant. The trial court denied probation and sentenced defendant to the upper term of four years. Defendant now appeals, arguing (1) the trial court violated his due process rights by relying on an inaccurate probation report for sentencing, (2) the trial court abused its discretion by denying probation and sentencing defendant to the upper term, and (3) the

1

prosecutor engaged in misconduct by reading a partially false victim impact statement at sentencing. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

A.      *Factual history*[1]

In the early morning hours of February 3, 2019, after drinking approximately eight beers, defendant, his cousin Rodolfo Garcia, and their two friends went to a fast food restaurant. The victim, James, approached Garcia, hugged him, and talked to him for several minutes while defendant ordered food. James was intoxicated and later tested positive for cocaine metabolites and was found to have a blood-alcohol content of 0.364. Defendant believed Garcia and James were having an argument, so defendant told James to walk away. James responded, "You don't tell me what to do," which offended defendant.

An unidentified man, presumably Garcia's friend, began to record the interaction on Garcia's phone. Defendant held the restaurant door open and said, "Square fight! Go outside, right now," and gestured for James to go outside. As James walked through the door, defendant pushed him in the back and tripped him. James, intoxicated, fell easily to the ground. As James tried to sit up, defendant punched him. Defendant then kicked James hard in the face. Defendant remained on his feet and punched James seven times in the face and the back of his head, as James flailed, rolling from his back to his knees and back again while clutching defendant's jacket and trying to protect himself. The impact of defendant's punches could be heard on the video over Garcia's talking and their friend's laughter. Defendant punched James in the face or head four more times. He then stepped on James and yanked his jacket from James's grasp. James, with a bloody and battered face, rolled onto his stomach. Defendant kicked James in the

---

[1]      These facts are taken from the probation officer's report, which the parties agreed could form the factual basis for defendant's plea.

shoulder. A voice on the recording told defendant that James had "had enough." Defendant then fled on foot, jumped a fence, and hid near a dumpster.

Garcia and the friend who recorded the incident went back inside the restaurant. Through the window, they saw James stagger back towards the restaurant door. Garcia said he would slap James and told someone to record it. Garcia walked over and opened the door. James stepped back and unsteadily lunged at Garcia, attempting to punch him but missing. Garcia said, "You want me?" and punched James in the face. James fell backwards and hit his head on the sidewalk, which rendered him unconscious. Garcia and the friend laughed, and Garcia posed with James's unconscious body for the camera. They then ran off to find defendant, leaving James unconscious on the ground.

A police officer arrived to find James lying on the sidewalk with facial swelling, a bloody nose, and large cut on his hand. James was transported to a medical center where he was placed in a medically induced coma. He regained consciousness the following day and was able to talk. His injuries included a traumatic brain injury, swelling or bruising of his brain behind his left eye, a skull fracture, bleeding in his brain, an auditory canal wound, a fracture of his facial bones, a closed fracture of his maxillary sinus, a sphenoid sinus fracture, and an orbital fracture that would require surgery to place a piece of material in his face to support his eye.

B. *Procedural history*

A complaint charged defendant with one count of battery resulting in serious injury (Pen. Code, § 243, subd. (d)).[2] Defendant pleaded no contest to the charge and acknowledged the upper term of four years. The parties stipulated that the factual basis for the plea could be taken from the probation report and the court adopted the findings in the plea form.

---

[2] Undesignated statutory references are to the Penal Code.

3

At sentencing, the court announced it had read the probation report, mitigation brief, and supporting documents, and stated its intent to impose the upper term. Defense counsel argued that the probation report based its recommendation on an erroneous version of events, one which failed to mention Garcia's role in James's injuries. Defendant then expressed remorse, apologized to the victim's family, and requested probation and a suspended sentence.

In turn, the prosecutor read a statement written by James's mother in which she faulted defendant for James's injuries and stated defendant had not adequately expressed remorse for the harm he caused to James.

The court first denied probation, noting defendant was statutorily ineligible for probation under section 1203, subdivision (e)(3). However, the court said it would regardless have denied probation because the seriousness and circumstances of this case were more egregious than other instances of the same crime, defendant's prior performance on probation was unsuccessful, and defendant was on probation for another alcohol-related offense, driving under the influence, at the time of the crime. The court balanced multiple circumstances in aggravation against defendant's minimal criminal record, finding that the aggravating factors outweighed the sole factor in mitigation, and imposed the upper term.

## DISCUSSION

### A. *Due process*

Defendant first argues the trial court violated his due process rights by relying on the factually flawed probation report when it imposed his sentence, which rendered his hearing fundamentally unfair. Specifically, he contends the probation report's "discussion and evaluation" section omitted any reference to Garcia and thus failed to separately evaluate the injuries caused solely by Garcia. He similarly argues the report concluded incorrectly that " '[t]he attack perpetrated by [defendant] necessitated that the

4

victim be placed in an induced coma,' " even though James was still conscious and walking after defendant's assault.

While a sentencing or probation hearing is not required to have the same procedural safeguards required at trial, such a hearing violates due process if it is fundamentally unfair. (*People v. Peterson* (1973) 9 Cal.3d 717, 726.) Fundamental unfairness may arise if a court relies on factually erroneous sentencing reports or other incorrect or unreliable information. (*People v. Eckley* (2004) 123 Cal.App.4th 1072, 1080 [material factual inaccuracies in sentencing documents rendered sentencing fundamentally unfair].) However, a trial court is deemed to have considered all relevant criteria in deciding whether to grant probation or in making any other discretionary sentencing choice, unless the record affirmatively shows otherwise. (Cal. Rules of Court, rule 4.409; *People v. Weaver* (2007) 149 Cal.App.4th 1301, 1313, disapproved on another ground in *People v. Cook* (2015) 60 Cal.4th 922, 939.)

We find that no fundamental unfairness was created by the trial court's reliance on the probation report during sentencing. Although the "discussion and evaluation" section of the probation report did not mention that Garcia injured James, the report elsewhere described the entire event, including a detailed accounting of Garcia's blow, James's fall, and the group decision to abandon James on the ground. Further, defendant's sentencing memorandum and statement in mitigation explained that James's injuries were caused by two separate attacks perpetrated by two different individuals. And his supplemental sentencing memorandum squarely addressed the probation report's purported conflation of the two attacks, arguing the report was misleading. Defendant's statement, as well as the "discussion and evaluation" section of the probation report, also mentioned that James was conscious after defendant beat him and fled.

Moreover, at the sentencing hearing, defense counsel referenced his mitigation statement and argued the probation officer "made his recommendation on facts which are not true," specifically, that defendant "did not cause the injuries or all of the injuries to

5

[James]." He reiterated that James was conscious after defendant beat him, and argued that "as a result of [the] second fight, [James] incurred and suffered these tremendous head injuries."

Thus, the trial court was repeatedly apprised that Garcia's role in the attack was not expressly referenced in the probation report. And we presume, in the absence of affirmative evidence to the contrary, the court understood that Garcia, not defendant, punched James in the face and knocked him unconscious, which was explained orally, in the probation report, and in defendant's briefs. As a result, the language in the probation report did not render sentencing fundamentally unfair.

B. *Abuse of discretion – probation*

Defendant next argues the trial court abused its discretion by denying him probation. While he concedes he was presumptively ineligible for probation, he argues that probation should have been granted because this case qualifies as unusual, in that the crime was substantially less serious than typical batteries resulting in serious injury and defendant has no record of committing similar crimes or crimes of violence. He notes that James instigated their interaction by hugging Garcia, and argues James escalated the fight by telling defendant, "You don't tell me what to do." James then agreed to fight defendant outside, and even after defendant beat him, James still challenged Garcia to a fight. And defendant again argues the probation report's recommendation overstated the seriousness of defendant's crime by failing to acknowledge Garcia's part in James's injuries. Defendant also contends his youthful age (24) and his lack of prior violent crimes render this case unusual and thus exempt from probation ineligibility. We find no abuse of discretion.

A trial court has broad discretion to grant or deny probation, except where otherwise limited by statute, and a decision denying probation will be reversed only upon a clear showing of abuse and that the court acted in a capricious or arbitrary manner. (*People v. Marquez* (1983) 143 Cal.App.3d 797, 803.) A person convicted of battery

6

resulting in serious injury is statutorily ineligible for probation unless the court finds unusual circumstances where the interests of justice would best be served by granting probation. (§ 1203, subd. (e)(3).) In determining whether a case is "unusual," the court may consider whether the circumstances of the crime were "substantially less serious than the circumstances typically present in other cases involving the same probation limitation, and the defendant has no recent record of committing similar crimes or crimes of violence." (Cal. Rules of Court, rule 4.413(c)(l)(A).) The court may also consider whether a defendant is youthful with no significant record of criminal conduct. (Cal. Rules of Court, rule 4.413(c)(2)(C).) Mere suitability for probation does not overcome the presumption against probation; if the statutory limitations on probation are to have any substantial scope and effect, " ' "unusual cases" ' " and " ' "interests of justice" ' " must be narrowly construed. (*People v. Stuart* (2007) 156 Cal.App.4th 165, 178.)

In this case, the court could reasonably conclude that this battery was not substantially less serious than the typical battery resulting in serious injury. Indeed, defendant's attack was violent, extensive, largely unprovoked, and directed at James's head and face. While James tacitly agreed to fight defendant, defendant began the fight by tripping and pushing James, who fell easily in his intoxicated state before defendant relentlessly beat him from above. Defendant then fled, leaving James, who was beaten and bloody, outside, even before Garcia punched him. The court's conclusion is thus supported regardless of Garcia's role in James's injuries and irrespective of whether James remained conscious after defendant's beating.[3] Defendant's attempt to frame James as an aggressor, and as only minimally injured by defendant, is simply not borne out by the facts.

---

[3]     As discussed, the court was apprised of all the facts defendant contends were omitted from the probation report's recommendation.

Further, although defendant is young and does not have a history of committing similar crimes or violent crimes, defendant committed this alcohol-fueled crime while on probation for driving under the influence. Taking this together with the egregious nature of the crime, the court reasonably determined that his case did not qualify under a narrow exception permitting probation in the interests of justice. We find no abuse of discretion.

C. *Abuse of discretion – upper term*

Defendant also contends the trial court abused its discretion by imposing the upper term. He again argues the trial court erroneously relied upon the probation report's conflation of the two attacks and reiterates that the crime was substantially less serious than other batteries resulting in serious injury. He further argues the court erroneously found that James was a vulnerable victim when it imposed the upper term. Again, we disagree.

We review a trial court's sentencing decision for abuse of discretion. (*People v. Sandoval* (2007) 41 Cal.4th 825, 847.) California's determinate sentencing law permits a trial court to base an upper term sentence upon "any aggravating circumstance that the court deems significant [and] 'reasonably related to the decision being made.' " (*Id.* at p. 848, quoting Cal. Rules of Court, rule 4.408(a).) A trial court is "required to specify reasons for its sentencing decision, but will not be required to cite 'facts' that support its decision or to weigh aggravating and mitigating circumstances." (*Sandoval, supra*, at pp. 846-847.) Moreover, " '[t]he burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review.' " (*People v. Superior Court* (*Alvarez* ) (1997) 14 Cal.4th 968, 977-978.)

Only a single aggravating factor is required to impose the upper term. (*People v. Nicolas* (2017) 8 Cal.App.5th 1165, 1182.) At sentencing, the court cited multiple

aggravating factors, finding this was a crime involving great violence disclosing a high degree of cruelty or callousness, the victim was particularly vulnerable, defendant was on probation at the time of the offense, and defendant had failed previously on probation.[4] (Cal. Rules of Court, rule 4.421(a)(1), (3) & (b)(4), (5).) It properly weighed those factors against the single mitigating factor of defendant's limited criminal record. (Cal. Rules of Court, rule 4.423(b)(1).) As discussed, *ante*, the callous and violent nature of the offense is well-supported by the record. And again, there is no evidence the trial court was unaware of Garcia's later attack or failed to consider it when weighing those factors. The trial court's reasoning thus constituted a proper qualitative and quantitative analysis that the number and gravity of aggravating factors well offset the sole mitigating factor, thereby supporting imposition of the upper term.

D.     *Prosecutorial misconduct*

Finally, defendant contends the prosecutor committed prosecutorial misconduct by reading James's mother's victim impact statement at sentencing, which failed to mention Garcia as an intervening factor and asserted that defendant showed no remorse. While defendant argued at sentencing that the statement was misleading, he never objected to the statement's admission. Thus, defendant's claim of prosecutorial misconduct is forfeited on appeal. (*People v. Hill* (1998) 17 Cal.4th 800, 820.)

---

[4]     Although defendant argues James was not a vulnerable victim, James's severe intoxication rendered him particularly vulnerable to the battery. (See, e.g., *People v. Hoover* (2000) 77 Cal.App.4th 1020, 1031 [victim was particularly vulnerable because, in part, she was acutely intoxicated with alcohol].)

9

DISPOSITION

The judgment is affirmed.


      KRAUSE      , J.


We concur:


     BLEASE     , Acting P. J.


     RENNER     , J.